**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

-FILED-

JAN 08 2025

At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DOMNIQUE A. SMITH FOREIGN TRUST,
By and Through Trustee, Jordan C. Smith,     )

          **Plaintiff**     )
      )
**v.**     )
      )     CASE NO. 2:25-CV-8
**FIRST MERCHANTS BANK,**     )
**DOVENMUEHLE MORTGAGE INC.,**     )
**WILMINGTON TRUST,**     )
**M&T BANK CORPORATION, and**     )
**DOES 1-10,**     )
          **Defendant**     )

---

**Verified Complaint for Violations of Federal Consumer Protection Laws and Breach of Fiduciary Duty**

## INTRODUCTION

1. This action arises from Defendants' systemic, deliberate, and repeated violations of federal and state laws governing consumer protection, fiduciary obligations, and banking practices. At the heart of this complaint is the **Consumer Bill of Rights,** which enshrines fundamental protections in financial transactions. Defendants' actions flagrantly disregard these rights, violating statutes including the **Truth in Lending Act (TILA),** 15 U.S.C. §§ 1601–1666j; the **Uniform Commercial Code (UCC)** Articles 3 and 9; the **Fair Credit Reporting Act (FCRA),** 15 U.S.C. § 1681 et seq.; the **Fair Debt Collection Practices Act (FDCPA),** 15 U.S.C. § 1692 et seq.; the **Equal Credit Opportunity Act (ECOA),** 15 U.S.C. § 1691; and the **Federal Reserve Act,** 12 U.S.C. §§ 221, 411–412, and 504. Additionally, Defendants' violations implicate 18 U.S.C. § 8, which classifies financial instruments, including promissory notes, as obligations of the United States.

2. Plaintiff, as Trustee for the **DOMNIQUE A. SMITH Foreign Trust**, has endured severe financial, emotional, and reputational harm due to Defendants' fraudulent practices, procedural mismanagement, and systemic misconduct. Central to this case is Defendants' failure to honor fiduciary obligations, including mishandling payments tendered under UCC §§ 3-206 (restrictive indorsements) and 3-603 (tender of payment), and engaging in unauthorized securitization of Plaintiff's property under UCC Article 9.

3. The Defendants' **2020 Prospectus** further underscores their systemic misconduct. While the prospectus acknowledges shareholders as "direct investors," it omits critical information about securitization practices and the financial risks imposed on borrowers and investors alike. This failure to disclose material terms demonstrates a systemic disregard for transparency and investor protections, directly contradicting principles established by the SEC and federal consumer protection laws. The omissions in the prospectus parallel Defendants' violations in Plaintiff's case, where critical terms about securitization, collateral, and borrower rights were withheld, depriving Plaintiff of essential knowledge to protect their financial interests.

4. Plaintiff's journey to capacity underscores the gravity of Defendants' systemic violations. Grounded in constitutional principles such as **Article I, Section 10** (legal tender) and **Article IV** (Full Faith and Credit Clause), Plaintiff's understanding expanded through federal statutes, including the **Bills of Exchange Act,** the **Federal Reserve Act,** and **12 U.S.C. § 1431,** which governs banks' fiduciary obligations. This capacity enabled Plaintiff to identify and address Defendants' violations, including their breaches of trust law and the specific terms of FMB's prospectus, trust indenture, original mortgage contract, and Plaintiff's subsequent novation.

5. Plaintiff alleges that Defendants' violations include, but are not limited to:
   o **Failure to Credit Payments**: Defendants failed to credit payments tendered via lawful negotiable instruments, as mandated under UCC §§ 3-104, 3-206, and 3-603, despite receiving clear instructions and documentation.
   o **Misrepresentation to Credit Bureaus**: Defendants falsely reported Plaintiff's account as delinquent, in violation of FCRA and ECOA, causing significant harm to Plaintiff's creditworthiness and reputation.
   o **Unauthorized Securitization**: Defendants securitized Plaintiff's mortgage obligation without notice or consent, constituting fraud and a breach of fiduciary duty under UCC Article 9.
   o **Violation of Federal Banking Laws**: Defendants disregarded 12 U.S.C. § 411 by failing to process Federal Reserve obligations, including Plaintiff's tendered payments, and breached 12 U.S.C. § 412 by mismanaging collateral obligations tied to the Federal Reserve System.

6. The doctrine of **Equitable Estoppel** bars Defendants from denying their fiduciary obligations or asserting defenses inconsistent with their actions. Defendants explicitly acknowledged their fiduciary duties through their **prospectus,** contractual agreements, and role in the securitization process. Their failure to fulfill these obligations is both fraudulent and inequitable, warranting judicial intervention.

7. Plaintiff has exhausted all administrative remedies, including:
   o **Formal Disputes**: Plaintiff filed disputes with credit reporting agencies under FCRA and ECOA to address false reporting and adverse actions.
   o **Regulatory Complaints**: Plaintiff submitted detailed complaints to the **Consumer Financial Protection Bureau (CFPB)** and **Federal Trade Commission (FTC),** outlining Defendants' procedural misconduct.
   o **Notice of Assessment**: Plaintiff served Defendants with a **Notice of Assessment** under 12 U.S.C. § 504, specifying violations and calculating damages arising from their misconduct.

8. Defendants' continued reliance on dilatory tactics, procedural omissions, and deceptive practices reflects a broader pattern of systemic abuse. These actions not only caused direct harm to Plaintiff but also jeopardize public trust in financial institutions and consumer credit systems. The omissions in FMB's prospectus further highlight the need for transparency, accountability, and reform in financial practices.

9. This complaint seeks to hold Defendants accountable, secure redress for Plaintiff's substantial harm, and compel compliance with federal and state laws. By pursuing this litigation, Plaintiff aims to vindicate their rights while advocating for systemic reform to ensure transparency, equity, and accountability in consumer credit transactions. Defendants' actions demand judicial intervention to restore integrity and protect consumer rights in the financial sector.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under federal law, including the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1666j; the Fair Credit

Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq.; the Uniform Commercial Code (UCC) Articles 3 and 9 as adopted by Indiana; and the Federal Reserve Act, 12 U.S.C. §§ 221, 411–412, and 504. Supplemental jurisdiction over related state law claims is invoked under 28 U.S.C. § 1367 because they arise from the same set of facts and form part of the same case or controversy.

11. This Court has personal jurisdiction over Defendants, including Wilmington Trust/M&T Bank, pursuant to principles of general and specific jurisdiction. Defendants conduct substantial business activities in Indiana, including but not limited to servicing loans, engaging in collection practices, and securitizing accounts related to Indiana properties. These activities constitute continuous and systematic contact with Indiana, satisfying the "minimum contacts" requirement under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

12. Specific jurisdiction is proper because Plaintiff's claims directly arise from Defendants' activities within Indiana. Defendants actively engaged in servicing the mortgage for property located in Indiana, misrepresenting account statuses, initiating collection efforts, and securitizing obligations associated with that property without proper disclosure or authorization. These activities caused harm within the state and are intrinsically tied to the claims in this action.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. The mortgage in question pertains to real property located in Indiana, and the financial and procedural misconduct alleged herein directly impacted Plaintiff within this district.

14. Defendants may attempt to assert improper venue or lack of personal jurisdiction. However, such defenses are without merit.

- **Improper Venue**: The claims arise from Defendants' direct actions related to property and obligations tied to Indiana, making this district the most appropriate forum. Any argument asserting improper venue disregards the substantial nexus between the events and this jurisdiction.
- **Lack of Personal Jurisdiction**: Wilmington Trust/M&T Bank, as a party to the mortgage servicing arrangement, has purposefully availed itself of conducting business in Indiana, including securitizing Plaintiff's obligations. These activities are more than sufficient to establish personal jurisdiction under federal and state standards.

15. Plaintiff's domicile in Indiana further establishes this jurisdiction's relevance. Domicile, as opposed to residence, aligns with Plaintiff's standing in this Court and supports the appropriateness of this venue without creating ambiguity regarding jurisdiction.

16. Plaintiff respectfully submits that this Court has jurisdiction and venue over this matter and all parties involved. Any arguments to the contrary lack legal or factual foundation and should be dismissed as frivolous or dilatory.

## PARTIES

17. **Plaintiff**:
   DOMNIQUE A. SMITH FOREIGN TRUST (hereinafter "Plaintiff" or "the Trust") is a private, irrevocable foreign trust established under applicable federal and international trust laws, with its principal place of administration in Indiana. Plaintiff is represented by its duly appointed Trustee, Jordan C. Smith, who also serves as an ambassador of the Nation of the Amnesty Coalition.

- The Trust is the legal holder of the property located at **4436 Torrence Avenue, Indiana**, which is subject to the mortgage at issue in this action.

- As Trustee, Jordan C. Smith possesses fiduciary and administrative authority over the Trust and acts on behalf of its interests.
- The Trust brings this action to address Defendants' systemic violations of its contractual rights, statutory protections, and fiduciary expectations.

18. **Defendant First Merchants Bank (FMB)**:
    FMB is a state-chartered bank operating under the regulatory oversight of the FDIC, with its principal office located in Muncie, Indiana.

- FMB is the lender and mortgagee under the original mortgage agreement executed by Dominique A. Smith.
- FMB services mortgages, including the Plaintiff's, within this judicial district and engages in loan servicing, collection, and credit reporting activities.
- FMB is accused of systemic breaches of federal consumer protection laws, including but not limited to TILA, UCC, and ECOA, by failing to honor Plaintiff's lawful tender of payments, misreporting account status, and engaging in dilatory and deceptive practices.
- Through its public prospectus, FMB identifies borrowers as "direct investors" and issuers of notes, yet it has failed to fulfill its fiduciary obligations to Plaintiff in this capacity.

19. **Defendant DMI**:
    DMI is a third-party loan servicing company contracted by FMB to manage mortgage accounts, including the loan associated with Plaintiff's property.

- DMI is responsible for collecting payments, maintaining records, and reporting account activity to credit bureaus.
- DMI has engaged in deceptive practices, including misapplication of payments tendered by the Plaintiff, false credit reporting, and harassment in violation of FDCPA and FCRA.
- Despite receiving Plaintiff's certified administrative notices, including legal tenders under UCC §§ 3-206 and 3-603, DMI failed to cease collection efforts or provide a transparent accounting of the mortgage account.

20. **Defendant Wilmington Trust/M&T Bank**:
    Wilmington Trust, a subsidiary of M&T Bank Corporation, serves as the indenture trustee for the securitization of mortgage-backed securities issued by FMB.

- Wilmington Trust is responsible for overseeing compliance with the Indenture Trust Agreement, ensuring transparency and lawful practices in the securitization of mortgage assets, including Plaintiff's loan.
- As a trustee, Wilmington Trust failed to prevent unauthorized securitization of Plaintiff's mortgage and neglected its fiduciary duties to provide full disclosures and accurate account reconciliation.
- By failing to protect the Trust's interests, Wilmington Trust directly contributed to the harm caused by the mismanagement and fraudulent securitization practices of FMB and DMI.

21. **Summary of Defendants' Roles and Actions**:

- **FMB**: As the original lender and mortgagee, FMB bears primary responsibility for the systemic breaches of Plaintiff's statutory and contractual rights, including unauthorized securitization, misrepresentation of account status, and harassment.

- **DMI**: As the loan servicer, DMI contributed to the harm by failing to honor payments, providing false account information, and engaging in deceptive collection practices.
- **Wilmington Trust**: As the indenture trustee, Wilmington Trust facilitated the unauthorized securitization of Plaintiff's mortgage and failed to enforce fiduciary protections under the Indenture Trust Agreement.

22. Collectively, Defendants' actions constitute a coordinated and systemic failure to comply with federal laws, including TILA, UCC, ECOA, and FDCPA, as well as their fiduciary obligations under common law. Plaintiff seeks to hold each Defendant accountable for its distinct role in causing harm and perpetuating violations.

## FACTUAL BACKGROUND

23. This case arises from Defendants' deliberate and systemic violations of fiduciary duties, statutory obligations, and consumer protection laws. Their actions include fraudulent misrepresentation in mortgage disclosures, unauthorized securitization, mismanagement of payments, and willful non-compliance with federal statutes such as the **Truth in Lending Act (TILA)**, **Uniform Commercial Code (UCC)**, and **Federal Reserve Act**, among others. These violations have caused substantial harm to Plaintiff, **DOMNIQUE A. SMITH Foreign Trust**, and its financial interests.

### Journey to Capacity

24. Plaintiff's journey to capacity is rooted in an in-depth analysis of constitutional principles, such as **Article I, Section 10** (Legal Tender Clause) and **Article IV** (Full Faith and Credit Clause), as well as federal statutes, including the **Bills of Exchange Act** and the **Federal Reserve Act**. Through these studies, Plaintiff uncovered that promissory notes and other financial instruments constitute obligations of the United States under **18 U.S.C. § 8 and 12 U.S.C. §§ 411–412**, creating enforceable fiduciary duties upon institutions like Defendants.

25. Plaintiff's examination of **FMB's 2020 Prospectus** revealed that while it identifies shareholders as "direct investors," it omits critical information regarding the risks associated with the securitization of consumer obligations such as mortgages. This omission deprived Plaintiff of essential information required to protect their financial interests, directly violating transparency principles established under federal securities laws and the Consumer Bill of Rights. Recognizing the fiduciary relationship established through financial transactions, Plaintiff took steps to novate the original contract and assert rights explicitly afforded under federal statutes and trust principles.

### Timeline of Events and Administrative Actions

26. On October 25, 2022, Plaintiff received an initial mortgage closing disclosure detailing key financial terms, including a loan amount of $150,030. However, a subsequent disclosure dated October 27, 2022, reflected a different loan amount of $154,800, without explanation. Other discrepancies between the two disclosures included differing finance charges, total payments, and amounts already paid by or on behalf of the borrower.

27. Material discrepancies in these documents, such as mathematically impossible calculations and inflated charges, signal gross negligence or intentional misrepresentation by Defendants. Examples include:

- The October 27 disclosure listed a finance charge of $133,619.64, while the October 25 disclosure listed $137,633.02, a difference of $4,013.38.
- The October 27 disclosure reported a total payment of $284,527.09, significantly lower than the $293,385.47 stated on October 25, without any substantive explanation.

28. In response to these irregularities, Plaintiff took the following administrative actions:

- **October 2024**: Tendered lawful payments via bills of exchange for the October and November obligations, endorsed under **UCC §§ 3-206** and **3-603**.
- **November 14, 2024**: Submitted a formal payoff statement along with supporting documentation, invoking **15 U.S.C. § 1666** to halt collection efforts pending dispute resolution.
- **November–December 2024**: Filed complaints with the **Consumer Financial Protection Bureau (CFPB)**, **Federal Trade Commission (FTC)**, and **Federal Deposit Insurance Corporation (FDIC)**, outlining Defendants' non-compliance, mismanagement, and fraudulent practices.

29. Despite acknowledging receipt of these lawful payments, Defendants failed to process them, reporting Plaintiff's account as delinquent to credit bureaus in violation of the **Fair Credit Reporting Act (FCRA)**. These actions reflect willful neglect and an intent to undermine Plaintiff's financial standing.

## Regulatory Responses and Defendants' Objections

30. In response to Plaintiff's CFPB complaint, Defendants acknowledged certain administrative errors but denied substantive wrongdoing. Their explanations lacked supporting documentation, failed to address material discrepancies in disclosures or payments, and asserted compliance without evidence.
31. Regulatory investigations were initiated based on Plaintiff's filings. Defendants face potential sanctions under **12 U.S.C. § 504**, which imposes civil penalties for willful non-compliance with federal banking laws.
32. Defendants' **2020 Prospectus** and trust indenture agreement confirm the unauthorized securitization of Plaintiff's mortgage obligation. These documents reveal Defendants' systematic practice of leveraging consumer loans as collateral for securities without disclosing these actions to borrowers, constituting fraud and breach of fiduciary duty.

## Consumer Bill of Rights and Equitable Estoppel

33. Defendants' actions blatantly violate the principles of the **Consumer Bill of Rights**, depriving Plaintiff of transparency, the right to dispute inaccuracies, and equitable treatment in financial transactions. The discrepancies in the mortgage disclosures and unauthorized securitization demonstrate an intent to exploit Plaintiff for financial gain.
34. The doctrine of **Equitable Estoppel** bars Defendants from asserting defenses that contradict their prior actions and representations. By accepting their fiduciary role in the prospectus and contractual agreements, Defendants are estopped from denying their obligations under **UCC**, **TILA**, and other applicable statutes. Their continued non-compliance underscores their intent to mislead and harm Plaintiff.

**Harm to Plaintiff**

35. Plaintiff has suffered significant financial, emotional, and reputational harm, including:

- **Financial Losses**: Mismanaged payments, unauthorized charges, and inflated costs due to Defendants' non-compliance.
- **Reputational Damage**: False credit reporting to bureaus, resulting in diminished financial standing and reputational harm.
- **Emotional Distress**: Anxiety, frustration, and emotional harm caused by Defendants' procedural misconduct and refusal to address regulatory remedies.

36. These harms underscore the systemic nature of Defendants' misconduct and their disregard for fiduciary and statutory duties. Plaintiff seeks judicial intervention to hold Defendants accountable, compel compliance with federal statutes, and prevent further violations of consumer rights and financial integrity.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF THE TRUTH IN LENDING ACT (TILA)

37. Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth herein.
38. Defendants have knowingly and willfully violated the **Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1666j,** by failing to meet their disclosure obligations, imposing unauthorized charges, engaging in deceptive practices, and obstructing Plaintiff's rights under federal law.

---

**Failure to Disclose Material Terms**

39. TILA, under **15 U.S.C. § 1602,** defines "finance charge" and "creditor" in ways that impose specific disclosure obligations on Defendants. Defendants failed to meet these obligations by:

- Omitting material terms related to the securitization of Plaintiff's loan, which would substantially affect the costs and risks associated with the loan.
- Providing conflicting disclosures in the October 25 and October 27, 2022, closing documents, including discrepancies in the loan amount, finance charges, and total payments, without explanation.
- Failing to clearly disclose the implications of granting a security interest in the property at **4436 Torrence Ave, Hammond, IN,** in connection with unauthorized securitization.

40. The Defendants' **2020 Prospectus** omitted material information regarding their securitization practices, paralleling their failure to disclose the implications of securitization in Plaintiff's mortgage documents. These systemic omissions violate **15 U.S.C. § 1638(a),** which requires creditors to provide clear and conspicuous disclosures. Specifically:

- The prospectus recognized shareholders as "direct investors" but failed to disclose how securitization impacts borrowers whose loans are converted into financial instruments.

- These omissions deprived Plaintiff of essential information required to protect their financial interests and make informed decisions, violating transparency principles under federal securities and consumer protection laws.

41. Pursuant to **15 U.S.C. § 1638(a)**, Defendants were required to disclose:

- The annual percentage rate (APR).
- The total finance charge.
- The total amount financed.
- The payment schedule.
- The existence and implications of a security interest in the property.

42. Defendants violated **§ 1638(a)** by:

- Misrepresenting the total cost of credit with mathematically impossible calculations in their disclosures.
- Failing to disclose the risks and terms of the loan's securitization, depriving Plaintiff of the ability to make informed decisions about the financial transaction.

---

## Unauthorized and Inflated Charges

43. Under **15 U.S.C. § 1605**, "finance charge" excludes charges payable in a comparable cash transaction. Defendants violated this provision by:

- Improperly categorizing securitization, administrative, and servicing fees as finance charges, inflating the overall cost of credit.
- Imposing unauthorized fees and penalties, including late charges not disclosed at the loan's inception.

44. Sections 5 and 14 of the mortgage agreement explicitly required Defendants to:

- Refund overcharged amounts exceeding permitted limits.
- Adjust the principal balance or provide refunds for improperly assessed fees.

45. Defendants failed to meet these obligations, depriving Plaintiff of contractual and statutory protections against inflated charges.

---

## Failure to Credit Payments and Disclosures Regarding Tender

46. Under **15 U.S.C. § 1639(f)**, TILA prohibits creditors from failing to credit payments made in accordance with the loan agreement. Defendants violated this provision by:

- Rejecting lawful payments tendered via restricted endorsements under **UCC §§ 3-206 and 3-603**.
- Failing to apply these payments to the loan balance and instead imposing additional late fees and penalties.

47. Pursuant to **15 U.S.C. § 1666**, TILA mandates that creditors cease collection efforts on disputed amounts while billing errors are resolved. Defendants failed to:

- Respond to Plaintiff's written disputes with proper investigations or corrections.
- Cease collection efforts, continuing to report delinquent account status to credit bureaus, in violation of **§ 1666**.

## Deceptive and Inadequate Disclosures

48. TILA, under **15 U.S.C. § 1632(a)**, requires that disclosures be clear and conspicuous. Defendants violated this standard by:

- Obscuring material terms, including the allocation of payments and securitization of the loan, preventing Plaintiff from providing informed consent.
- Failing to notify Plaintiff of the securitization of the loan, as required by **15 U.S.C. § 1641(g)**.

49. Defendants' omission of key details and inadequate disclosures deprived Plaintiff of essential rights, including the ability to dispute or challenge the securitization.

## Failure to Refund Credit Balances

50. Under **15 U.S.C. § 1615**, creditors must refund any credit balance upon the borrower's request. Defendants violated this provision by:

- Ignoring Plaintiff's requests for refunds of overcharges and improperly assessed fees.
- Failing to issue refunds or provide any explanation, despite multiple notices from Plaintiff.

## Pattern and Practice of Violations

51. Defendants' actions exhibit a systemic pattern of non-compliance with TILA, including:

- Unauthorized securitization of Plaintiff's loan without disclosure or consent.
- Failure to credit lawful payments made by Plaintiff.
- Imposition of unauthorized charges and penalties beyond the scope of the agreement.
- Providing deceptive and inadequate disclosures that obscure material terms and violate transparency requirements.
- Continuing collection efforts on disputed amounts, contrary to TILA mandates.

52. These actions reflect deliberate and willful misconduct by Defendants, resulting in significant financial loss, reputational damage, and emotional distress to Plaintiff.

**Equitable Estoppel to Counter Defenses**

53. The doctrine of **Equitable Estoppel** bars Defendants from asserting defenses that contradict their prior actions and representations. By accepting payments, issuing disclosures, and engaging in securitization, Defendants cannot now disclaim their obligations under TILA or the mortgage agreement.

**Relief Requested Under TILA**

54. Pursuant to **15 U.S.C. § 1640(a)**, Plaintiff seeks the following relief:

- **Declaratory Relief**: A declaration that Defendants violated TILA and failed to fulfill their statutory obligations.
- **Compensatory Damages**: Compensation for financial losses caused by inflated charges, unauthorized securitization, and improper servicing.
- **Statutory Damages**: Monetary damages for each violation of TILA, up to the statutory limits.
- **Injunctive Relief**: An order requiring Defendants to provide accurate disclosures, apply lawful payments, and cease all unlawful practices.
- **Attorney's Fees and Costs**: Reimbursement for all legal expenses incurred in pursuing this action.
- **Other Relief**: Any additional relief deemed just and proper by this Court.

55. By willfully violating TILA, Defendants have demonstrated a disregard for transparency and fairness in consumer transactions, necessitating judicial intervention to prevent further harm to Plaintiff and other consumers.

## COUNT II: BREACH OF FIDUCIARY DUTY

56. Plaintiff incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

**Fiduciary Responsibilities Owed by Defendants**

57. Defendants owed fiduciary duties to Plaintiff through multiple established legal and contractual frameworks, requiring them to act in good faith, prioritize Plaintiff's interests, and comply with statutory and equitable obligations:

- **Original Mortgage Agreement**: Incorporated federal law provisions mandating transparency, fair dealing, and compliance with Sections 5 and 14, which explicitly safeguard against unauthorized charges and overcharges.
- **FMB's Prospectus**: Identified borrowers and shareholders, including Plaintiff, as "direct investors," inherently acknowledging fiduciary obligations to protect their interests and act in good faith. The prospectus failed to disclose the risks associated with securitization practices, undermining trust and transparency.

- **Trust Indenture with Wilmington Trust/M&T Bank**: Established fiduciary duties tied to the securitization of Plaintiff's mortgage, requiring transparency, equitable treatment, and good faith in all transactions.

58. Under **UCC § 3-307**, Defendants had an obligation to act in good faith and exercise due diligence in managing payments submitted under a fiduciary relationship:

- Plaintiff tendered payments via negotiable instruments (bills of exchange) with restricted endorsements under **UCC §§ 3-206** and **3-603**.
- Defendants failed to process or apply these payments, disregarding statutory and trust law principles.
- Defendants' refusal to honor these payments and failure to maintain transparency constituted a clear breach of fiduciary duty.

## Breach of Fiduciary Duty by Defendants

### Failure to Apply Payments

59. Plaintiff tendered payments in accordance with **UCC §§ 3-206** and **3-603**, yet Defendants:

- Failed to credit these payments or provide a clear accounting.
- Imposed unwarranted late fees, penalties, and other charges, compounding Plaintiff's financial harm.

### Unauthorized Securitization

60. Defendants securitized Plaintiff's mortgage without notice or consent, violating trust principles and the terms of the **Trust Indenture**. This practice:

- Created conflicts of interest and misaligned priorities, benefitting Defendants at Plaintiff's expense.
- Breached fiduciary duties by failing to disclose the securitization's implications, including increased financial risks and diminished rights for Plaintiff.

61. **FMB's 2020 Prospectus** omitted critical information about its securitization practices, reflecting systemic breaches of good faith and transparency. The prospectus:

- Misrepresented the relationship between borrowers, investors, and the institution.
- Failed to disclose how securitization practices could impact the rights and financial interests of borrowers like Plaintiff.

**Failure to Disclose Material Information**

62. Defendants withheld critical details about the securitization process and its financial impact on Plaintiff, including:

- Risks associated with transferring the mortgage obligation to third parties.
- Changes in the rights and remedies available to Plaintiff under the securitized arrangement.

**Mismanagement of Account**

63. Defendants engaged in systemic mismanagement of Plaintiff's account by:

- Imposing unauthorized charges and penalties despite notice of disputes.
- Ignoring Plaintiff's documented attempts to resolve errors, contrary to statutory and contractual requirements.

**Misrepresentation to Credit Bureaus**

64. Defendants reported Plaintiff's account as delinquent and in default despite:

- Receiving lawful payments tendered via negotiable instruments.
- Being notified of disputes under **15 U.S.C. § 1666**.

65. These misrepresentations caused severe reputational harm to Plaintiff, undermining Plaintiff's creditworthiness and trust standing.

**Application of Equitable Estoppel**

66. The doctrine of **equitable estoppel** bars Defendants from denying their fiduciary obligations or asserting claims inconsistent with their prior actions and representations:

- **Acceptance of Role**: Through their prospectus, trust indenture, and contractual agreements, Defendants acknowledged their fiduciary role and obligations to act in good faith.
- **Inconsistent Conduct**: Defendants securitized Plaintiff's mortgage and accepted payments, then denied responsibilities inherent in their fiduciary obligations.
- **Estoppel Application**: Defendants are estopped from claiming that no fiduciary duty existed or relying on technical defenses to evade liability.

**Harm Caused by Defendants' Breach**

67. Defendants' breach of fiduciary duty directly caused Plaintiff substantial harm, including:

- **Financial Harm**: Unauthorized charges, penalties, and overcharges that were never refunded as required by law and contract.
- **Reputational Damage**: False reporting of delinquency and default to credit bureaus, undermining Plaintiff's creditworthiness.
- **Emotional Distress**: Anxiety, frustration, and emotional harm caused by Defendants' harassment, procedural delays, and failure to provide clear resolutions.

68. These harms were exacerbated by Defendants' systemic neglect and disregard for their fiduciary obligations, reflecting a broader pattern of non-compliance and misconduct.

## Legal Basis for Fiduciary Duty

69. The fiduciary relationship between Plaintiff and Defendants is firmly supported by:

- **Federal Law**: Obligations under TILA, UCC, and FDCPA impose duties of transparency, good faith, and fair dealing on lenders and servicers.
- **Equity and Trust Law Principles**: Defendants' role in managing Plaintiff's mortgage and account inherently required them to act in a fiduciary capacity.
- **FMB's Prospectus and Trust Indenture**: Explicitly established fiduciary obligations tied to the mortgage agreement and securitization process.

## Relief Requested Under Breach of Fiduciary Duty

70. Plaintiff seeks the following relief for Defendants' breach of fiduciary duty:

- **Declaratory Judgment**: Affirming that Defendants owed and breached their fiduciary duties to Plaintiff.
- **Compensatory Damages**: For financial loss, reputational harm, and emotional distress caused by Defendants' misconduct.
- **Restitution**: For all unauthorized charges, penalties, and overcharges.
- **Injunctive Relief**: Requiring Defendants to implement transparent and compliant fiduciary practices, including accounting for all transactions related to Plaintiff's account.
- **Punitive Damages**: To deter Defendants and similar entities from engaging in such misconduct.
- **Additional Relief**: Any other relief deemed just and proper by this Court.

## COUNT III: VIOLATION OF UCC ARTICLE 3

## Relevance of UCC Article 3 to Plaintiff's Claims

71. Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth herein.
72. UCC Article 3 governs negotiable instruments, defining their applicability, requirements, and enforcement mechanisms. Plaintiff's tendered payments for October and November 2024 were

structured as negotiable instruments and were fully compliant with UCC requirements, yet were improperly dishonored by Defendants.

73. UCC § 3-102 establishes that Article 3 applies to negotiable instruments and excludes "money" from its scope. However, instruments intended as legal tender in commercial transactions fall squarely within Article 3's provisions, making Plaintiff's bills of exchange subject to its protections.

## Plaintiff's Compliance with UCC Article 3

74. Plaintiff tendered payments for October and November 2024 using lawful negotiable instruments, adhering to the specific requirements under UCC Article 3:

- **October Remittance Coupon:**
  - Front: Marked with "Accept for deposit," "Pay to the Bearer," and the exact due balance.
  - Back: Restricted indorsement reading:
    - "By: Jordan C. Smith/Agent"
    - "For: DOMNIQUE A. SMITH/Principal"
    - "(WITHOUT RECOURSE) (WITHOUT PREJUDICE)"
- **November Payoff Sheet:**
  - Front: Marked similarly with "Accept for deposit," "Pay to the Bearer," and the total due.
  - Back: Restricted indorsement reading:
    - "Pay to the Order of: DOMNIQUE A. SMITH"
    - "By: Jordan C. Smith, Trustee"
    - "(WITHOUT RECOURSE) (WITHOUT PREJUDICE)"

75. These instruments complied with UCC § 3-206, which governs restrictive indorsements, and UCC § 3-419, which allows for accommodation parties to execute endorsements in a representative capacity, ensuring their enforceability as lawful tender.

## Defendants' Failure to Comply

76. Defendants failed to process Plaintiff's negotiable instruments, constituting multiple violations under UCC Article 3, including but not limited to:

## Dishonor of Instruments

- UCC § 3-502: Defendants dishonored the instruments by failing to pay or accept payments tendered in compliance with UCC requirements.
- UCC § 3-505: Defendants provided no adequate justification for the dishonor, constituting prima facie evidence of non-compliance and bad faith.

## Breach of Duty to Enforce

- UCC § 3-301: Defendants, as parties entitled to enforce the instrument, failed to fulfill their obligations by rejecting payments and imposing unwarranted penalties and fees.

**Misrepresentation of Account Status**

- Defendants continued to report Plaintiff's account as delinquent and in default despite receiving lawful and timely payments, directly violating UCC Article 3 and undermining Plaintiff's financial standing.

---

**Legal Tender and Federal Obligations**

77. Plaintiff's instruments adhere to legal tender principles reinforced by federal law, further substantiating their validity:

- **12 U.S.C. § 1431:** Establishes banks' authority to issue obligations and manage credit transactions, reinforcing the enforceability of negotiable instruments.
- **18 U.S.C. § 8:** Recognizes instruments such as bills of exchange as federally guaranteed obligations, bolstering their legal standing and enforceability.

78. By failing to honor Plaintiff's instruments, Defendants contravened federal standards, undermining their status as obligations of the United States and disregarding Plaintiff's legal rights.

---

**Systematic Failure to Honor Negotiable Instruments**

79. Defendants engaged in a pattern of systemic failure to honor negotiable instruments, evidenced by:

- **Omitting Required Processing:** Refusal to process payments in accordance with standard banking practices and UCC provisions.
- **Neglecting Transparency Obligations:** Withholding information about the rejection or non-acceptance of instruments.
- **Imposing Unwarranted Charges:** Imposing fees, penalties, and additional interest despite Plaintiff's lawful tender of payment.

80. These actions reflect Defendants' broader strategy to evade obligations under UCC Article 3, depriving Plaintiff of their rights and protections.

---

**Application of Equitable Estoppel**

81. The doctrine of equitable estoppel bars Defendants from denying the validity of Plaintiff's negotiable instruments or asserting defenses inconsistent with their prior conduct:

- **Recognition of Instruments:** Defendants' initial acceptance of prior payments establishes an implied acknowledgment of the validity of similar instruments.

- **Misconduct Inconsistent with Obligations:** Defendants' refusal to honor subsequent instruments contradicts their obligations under UCC Article 3 and principles of equity.

## Harm Caused by Defendants' Violations

82. As a direct and proximate result of Defendants' actions, Plaintiff has suffered:

- **Financial Harm:** Fees, penalties, and additional charges resulting from dishonored payments.
- **Reputational Damage:** False and defamatory reporting of delinquency and default to credit bureaus.
- **Emotional Distress:** Anxiety and frustration caused by Defendants' procedural delays, mismanagement, and failure to honor obligations.

## Relief Sought Under UCC Article 3

83. Plaintiff seeks the following relief for Defendants' violations of UCC Article 3:

- A **declaratory judgment** affirming that Plaintiff's instruments were valid negotiable instruments under UCC Article 3.
- **Compensatory damages** for financial losses, reputational harm, and emotional distress.
- **Injunctive relief** requiring Defendants to process and accept future lawful tender in accordance with UCC Article 3.
- **Restitution** for all fees, penalties, and charges imposed due to dishonored payments.
- Any other relief deemed just and proper by this Court.

# COUNT IV: VIOLATION OF UCC ARTICLE 9

## Relevance of UCC Article 9 to Secured Transactions

84. Plaintiff incorporates by reference paragraphs 1 through 83 as though fully set forth herein.
85. UCC Article 9 governs secured transactions, including the creation, perfection, and enforcement of security interests. It applies to the Defendants' handling of Plaintiff's consumer credit account, particularly regarding the unauthorized securitization of the account and Defendants' failure to comply with statutory obligations regarding transparency, perfection, and notification.
86. Defendants engaged in misconduct under UCC Article 9 by:

- Failing to disclose the creation of a security interest in the promissory note and its subsequent securitization.
- Neglecting to perfect and provide notification of the assignment of the security interest as required under UCC § 9-210.
- Violating Plaintiff's rights as a debtor and principal by mismanaging collateral and proceeds under UCC §§ 9-207, 9-208, and 9-315.

## Establishment and Mismanagement of Security Interests

87. Defendants created a security interest in the promissory note tied to Plaintiff's consumer credit account without proper disclosure or consent, violating UCC § 9-203, which requires debtor consent and enforceability conditions to be satisfied.

88. Defendants unauthorizedly securitized Plaintiff's account, transferring collateral to third parties without notification to or consent from Plaintiff, breaching UCC §§ 9-404 and 9-405, which safeguard the debtor's rights to notice and defense against assignees.

89. Defendants failed to meet their obligations under UCC § 9-210, depriving Plaintiff of the opportunity to:

- Obtain an accounting of the secured transactions.
- Verify the assignment of rights.
- Assert defenses against unauthorized securitization.

## Rights and Duties Regarding Collateral

90. UCC § 9-207 imposes duties on secured parties regarding the preservation and management of collateral. Defendants violated these obligations by:

- Failing to preserve the collateral (i.e., the promissory note) in good faith.
- Neglecting to account for the proceeds from the note's securitization and disposition.
- Withholding detailed information about the status and condition of the collateral.

91. Additionally, Defendants breached their duty under UCC § 9-208 by failing to provide timely responses to Plaintiff's inquiries regarding the status of the promissory note and any proceeds derived therefrom.

## Failure to Perfect Security Interests

92. UCC § 9-310 requires the filing of a financing statement or other steps to perfect a security interest, ensuring its enforceability and transparency. Defendants failed to meet these requirements, rendering their security interest improper and unenforceable.

93. Defendants' lack of perfection violated Plaintiff's rights and undermined the enforceability of the security interest against Plaintiff, third parties, and federal standards governing secured transactions.

## Unauthorized Actions with Collateral

94. UCC § 9-315 grants debtors equitable control over collateral and proceeds derived from its use. Defendants violated this provision by:

- Unauthorizedly securitizing Plaintiff's promissory note.
- Mismanaging the proceeds from securitization without providing an accurate accounting to Plaintiff.

95. Defendants' actions resulted in:

- Breaches of their fiduciary and contractual duties.
- Harm to Plaintiff's financial and legal interests, as Defendants failed to account for or properly allocate the proceeds from the disposition of collateral.

## Procedural Violations and Remedies

96. Defendants' systemic violations of UCC Article 9 include:

- Failing to provide timely notification of securitization and disposition under UCC § 9-611.
- Neglecting to allocate proceeds from the collateral disposition as required under UCC § 9-615.
- Ignoring Plaintiff's statutory right to redeem the collateral under UCC § 9-623.

97. These procedural violations deprived Plaintiff of their right to equitable treatment, transparency, and legal remedies under Article 9.

## Federal Nexus and Plaintiff's Rights as Principal

98. The promissory note associated with Plaintiff's account constitutes a financial instrument subject to federal obligations under:

- **12 U.S.C. § 1431:** Mandates transparency, accountability, and fiduciary responsibility in secured transactions.
- **18 U.S.C. § 8:** Recognizes promissory notes and similar instruments as federally guaranteed obligations, underscoring Plaintiff's entitlement to protections under federal law.

99. Defendants' mismanagement and securitization of the account contravened both UCC and federal requirements, depriving Plaintiff of their legal rights as a principal and creditor.

## Application of Equitable Estoppel

100.     The doctrine of equitable estoppel bars Defendants from denying their obligations or asserting defenses inconsistent with their prior conduct. Specifically:

- Defendants acknowledged the existence of a security interest through their prospectus, contractual agreements, and securitization practices.
- Defendants' failure to comply with Article 9's provisions and their subsequent misrepresentations are fundamentally inconsistent with their fiduciary and legal responsibilities.

## Harm Caused by Defendants' Violations

101.    As a direct and proximate result of Defendants' violations of UCC Article 9, Plaintiff has suffered:

- Financial harm, including penalties, fees, and charges incurred due to unauthorized disposition of collateral.
- Reputational damage stemming from Defendants' misrepresentation of account status to third parties, including credit bureaus.
- Emotional distress caused by procedural delays, omissions, and deceptive practices.

## Relief Sought Under UCC Article 9

102.    Plaintiff seeks the following relief for Defendants' violations of UCC Article 9:

- **Declaratory Judgment:** Affirming Plaintiff's rights to the proceeds and equitable control over the promissory note as collateral.
- **Compensatory Damages:** For financial loss, reputational harm, and emotional distress.
- **Injunctive Relief:** Requiring Defendants to:
  - Cease unauthorized securitization and disposition of collateral.
  - Provide a full and accurate accounting of all proceeds and transactions tied to the promissory note.
- **Restitution:** For penalties, fees, and charges imposed as a result of procedural violations.
- Any other relief deemed just and proper by this Court.

# COUNT V: VIOLATION OF FCRA, FDCPA, AND ECOA

## Violation of the Fair Credit Reporting Act (FCRA)

103.    Plaintiff incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

104.    The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., imposes statutory duties on furnishers of credit information to ensure accurate reporting, investigate disputes, and correct inaccuracies in a timely manner.

105.    Defendants knowingly and willfully violated the FCRA by:

- **Failure to Correct Reporting:** Reporting Plaintiff's account as delinquent for October and November 2024, despite Plaintiff tendering payments in full using lawful negotiable instruments, confirmed by certified receipts and internal acknowledgments from Defendants' representatives.
- **Failure to Investigate Disputes:** Ignoring Plaintiff's disputes submitted under 15 U.S.C. § 1681i and failing to investigate or correct inaccurate reporting within the statutory dispute resolution period, as required under 15 U.S.C. § 1681s-2(b).

- **Ongoing False Reporting:** Continuing to furnish erroneous derogatory information to credit reporting agencies (CRAs), despite receiving notice of disputes, in direct violation of Plaintiff's rights under 15 U.S.C. § 1681s-2(a).

106.    Plaintiff filed regulatory complaints with the Consumer Financial Protection Bureau (CFPB) and Federal Trade Commission (FTC) regarding these violations. Defendants' failure to conduct reasonable investigations or provide adequate responses underscores their willful non-compliance with federal law.

## Harm Caused by FCRA Violations

107.    Defendants' violations of the FCRA caused Plaintiff significant harm, including but not limited to:

- Financial harm resulting from diminished creditworthiness, adversely affecting Plaintiff's ability to secure financing for the trust.
- Reputational damage in financial and legal circles due to false credit reporting.
- Emotional and psychological distress stemming from the uncertainty and harm caused by Defendants' actions.

## Violation of the Fair Debt Collection Practices Act (FDCPA)

108.    The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., prohibits debt collectors from using false, deceptive, or unfair practices in their attempts to collect debts.

109.    Defendants violated the FDCPA through the following acts of misconduct:

- **False Representations:** Misrepresenting the character, amount, and legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2), by reporting the account as delinquent and in default after Plaintiff tendered payments in full.
- **Harassment and Abuse:** Persistently contacting Plaintiff with threats of foreclosure and adverse credit actions, constituting harassment and abuse under 15 U.S.C. § 1692d.
- **Failure to Cease Collection Efforts:** Continuing collection efforts despite Plaintiff's lawful invocation of rights under 15 U.S.C. § 1692c(c), which requires cessation of contact upon written notice.

110.    Defendants persisted in unlawful collection efforts even after Plaintiff submitted negotiable instruments as payment, further violating 15 U.S.C. § 1666, which mandates cessation of collection activities during a billing dispute.

## Harm Caused by FDCPA Violations

111.    Defendants' FDCPA violations caused Plaintiff severe harm, including but not limited to:

- Emotional distress due to harassing communications and threats of foreclosure.
- Financial harm resulting from the imposition of unauthorized fees and penalties.
- Reputational damage caused by Defendants' false representations to credit reporting agencies.

## Violation of the Equal Credit Opportunity Act (ECOA)

112.    The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq., prohibits creditors from engaging in discriminatory practices or retaliating against borrowers who exercise their legal rights.

113.    Defendants violated the ECOA by engaging in discriminatory and retaliatory conduct, including but not limited to:

- **Failure to Honor Payments:** Refusing to process Plaintiff's tendered payments via negotiable instruments, effectively denying equal access to financial resolutions available to other borrowers.
- **Disparate Treatment:** Treating Plaintiff unfairly and with undue scrutiny due to Plaintiff's assertion of legal rights as Trustee for the DOMNIQUE A. SMITH Foreign Trust.
- **Retaliation:** Continuing adverse credit reporting and collection efforts as a form of retaliation against Plaintiff for filing regulatory complaints and invoking rights under TILA, FDCPA, and FCRA.

114.    These actions reflect a systemic disregard for Plaintiff's rights under the ECOA and constitute discriminatory practices aimed at undermining Plaintiff's ability to effectively manage the trust's financial obligations.

## Regulatory Complaints and Defendants' Continued Misconduct

115.    Plaintiff pursued administrative remedies by filing complaints with:

- The Consumer Financial Protection Bureau (CFPB), citing violations of the FCRA and FDCPA.
- The Federal Trade Commission (FTC), highlighting deceptive practices and unfair debt collection methods.
- The Federal Deposit Insurance Corporation (FDIC), addressing systemic violations of fiduciary and regulatory obligations.

116.    Despite receiving notice of these complaints, Defendants failed to:

- Conduct a substantive investigation or provide Plaintiff with a detailed response.
- Cease reporting inaccurate and derogatory information to credit bureaus.
- Address and correct the documented inaccuracies, perpetuating harm to Plaintiff's financial standing.

**Application of Equitable Estoppel**

117.    The doctrine of equitable estoppel bars Defendants from denying their obligations under federal law or asserting defenses inconsistent with their conduct. Specifically:

- Defendants acknowledged their roles as creditors and debt collectors by continuing to report to CRAs and demand payments.
- Defendants' ongoing violations of FCRA, FDCPA, and ECOA demonstrate a willful intent to avoid compliance, undermining their ability to assert legal defenses.

**Harm Caused by Defendants' Violations**

118.    As a direct and proximate result of Defendants' violations of FCRA, FDCPA, and ECOA, Plaintiff has suffered:

- Financial losses due to diminished creditworthiness and reputational harm.
- Emotional distress caused by Defendants' harassment, procedural delays, and non-compliance.
- Legal costs incurred in attempting to enforce statutory rights and seek regulatory redress.

**Relief Sought for FCRA, FDCPA, and ECOA Violations**

119.    Plaintiff seeks the following relief:

- **Declaratory Judgment:** Affirming Defendants' violations of FCRA, FDCPA, and ECOA.
- **Statutory Damages:** For willful non-compliance under 15 U.S.C. § 1681n, § 1692k, and § 1691e.
- **Compensatory Damages:** For financial loss, emotional distress, and reputational harm.
- **Injunctive Relief:** Requiring Defendants to:
    - Cease all erroneous credit reporting and unlawful collection activities.
    - Correct and update all records with CRAs to accurately reflect the account status.
    - Provide a detailed accounting of all actions taken regarding Plaintiff's account.
- **Punitive Damages:** To deter future violations and ensure compliance with federal statutes.
- **Attorney's Fees and Costs:** For expenses incurred due to Defendants' violations and procedural misconduct.

120.    Plaintiff asserts that Defendants' systemic misconduct reflects a pattern of non-compliance that demands judicial intervention to protect consumer rights and enforce federal laws.

## COUNT VI: VIOLATION OF THE FEDERAL RESERVE ACT

121.    Plaintiff incorporates by reference paragraphs 1 through 120 as though fully set forth herein.

## Violation of 12 U.S.C. § 221: Recognition of Plaintiff's Trust as a Bank

122.     Under **12 U.S.C. § 221**, the term "bank" encompasses entities engaged in banking activities, including trusts managing financial transactions. The DOMNIQUE A. SMITH Foreign Trust, acting under the principles of private trust law and in compliance with federal statutes, qualifies as such an entity.

123.     Defendant, First Merchants Bank (FMB), failed to recognize Plaintiff's trust as a "bank" under the Federal Reserve Act, thereby denying Plaintiff access to financial tools and processes guaranteed under federal law.

124.     This denial constitutes discriminatory treatment, depriving Plaintiff's trust of rights afforded to similarly situated entities, and violates the equal access principles enshrined in federal banking laws.

## Violation of 12 U.S.C. § 411: Obligations of Federal Reserve Notes

125.     Federal Reserve notes are obligations of the United States, authorized and issued solely at the discretion of the Board of Governors of the Federal Reserve System. As such, **12 U.S.C. § 411** mandates that these notes are:

- Receivable by all national and member banks, and
- Obligations to be accepted for all taxes, customs, and other public dues.

126.     Defendant violated this statute by:

- Failing to acknowledge the Plaintiff's lawful tender of Federal Reserve obligations, including bills of exchange, as valid payment.
- Misrepresenting the nature of Federal Reserve notes and obligations as codified under federal law, thereby impeding the lawful resolution of debt.

127.     Defendant's refusal to process Plaintiff's payments violates **12 U.S.C. § 411** and undermines the statutory authority of Federal Reserve notes as obligations of the United States.

## Violation of 12 U.S.C. § 412: Tender of Collateral for Federal Reserve Notes

128.     **12 U.S.C. § 412** establishes that any bank applying for Federal Reserve notes must tender collateral in an amount equal to the sum of the notes applied for. This collateral may include notes, drafts, or bills of exchange, which are fully guaranteed as to principal and interest by the United States.

129.     Plaintiff, through the submission of negotiable instruments (bills of exchange), fulfilled the statutory requirements for tendering collateral as outlined in **12 U.S.C. § 412**.

130.     Defendant's failure to recognize or process these instruments violates **12 U.S.C. § 412**, demonstrating willful non-compliance with statutory obligations and further frustrating Plaintiff's ability to satisfy financial liabilities under federal law.

131.    By failing to honor Plaintiff's tender of lawful collateral, Defendant knowingly impeded the Plaintiff's right to resolve the alleged debt and engaged in actions contrary to the Federal Reserve Act.

---

## Violation of 12 U.S.C. § 504: Civil Money Penalties for Violations

132.    Under **12 U.S.C. § 504**, any member bank or institution-affiliated party that knowingly:

- Commits violations described under subsections (a) and (b),
- Engages in unsafe or unsound banking practices,
- Breaches fiduciary duties, and
- Causes substantial loss to a member bank or gain to themselves, shall forfeit civil penalties.

133.    Defendant knowingly violated **12 U.S.C. § 504** by:

- Engaging in unsafe practices such as failing to process lawful payments and misrepresenting Plaintiff's financial obligations.
- Breaching fiduciary duties by refusing to provide transparency and accountability in Plaintiff's financial transactions.
- Willfully disregarding their statutory obligations, causing harm to Plaintiff and pecuniary gain to themselves through continued collection efforts.

134.    Plaintiff has calculated the total civil penalties under **12 U.S.C. § 504(d)** to be $34,000,000 as of December 2, 2024. These penalties accrue daily at a maximum rate of $1,000,000 per day due to Defendant's continued violations.

---

## Systemic Non-Compliance with Federal Banking Laws

135.    Defendant's repeated violations of federal statutes reflect a broader pattern of systemic misconduct, characterized by:

- Denial of Plaintiff's statutory rights under the Federal Reserve Act.
- Mismanagement of obligations and collateral tendered under federal law.
- Failure to adhere to principles of transparency, equity, and accountability required by federal banking statutes.

136.    These actions not only harm Plaintiff but also undermine the integrity of the federal banking system, warranting significant judicial and regulatory intervention.

---

## Harm Resulting from Defendant's Violations

137.    As a direct and proximate result of Defendant's violations of the Federal Reserve Act, Plaintiff has suffered:

- Financial losses due to Defendant's refusal to process lawful payments.
- Reputational harm resulting from Defendant's failure to recognize and honor Plaintiff's rights.
- Emotional distress caused by Defendant's continued non-compliance and procedural misconduct.

138.    Defendant's actions have deprived Plaintiff of equitable access to financial resolutions, exacerbating the harm caused by their statutory violations.

---

## Relief Sought for Violations of the Federal Reserve Act

139.    Plaintiff seeks the following relief:

- Declaratory judgment affirming that Defendant violated **12 U.S.C. §§ 221, 411, 412, and 504**.
- Imposition of civil money penalties under **12 U.S.C. § 504(d)** for each day of continued violation.
- Injunctive relief requiring Defendant to:
  - Process Plaintiff's tendered payments in compliance with federal law.
  - Provide a full accounting of all financial transactions related to Plaintiff's account.
- Compensatory damages for financial loss, reputational harm, and emotional distress.
- Punitive damages to deter future violations and ensure compliance with federal banking laws.
- Attorney's fees, costs, and any other relief deemed just and proper by this Court.

140.    Plaintiff asserts that Defendant's violations of the Federal Reserve Act represent a fundamental breach of federal banking principles. Plaintiff seeks to hold Defendant accountable and ensure that such misconduct is appropriately addressed to restore the integrity of the financial system.

## COUNT VII: FRAUD

---

### Elements of Fraud and Defendant's Intentional Misrepresentation

141.    Plaintiff incorporates by reference paragraphs 1 through 140 as though fully set forth herein.

142.    Fraud under common law requires proof of the following elements:

- **Material Misrepresentation**: Defendant made false or misleading statements or omissions.
- **Knowledge of Falsity or Reckless Disregard for Truth**: Defendant knowingly or recklessly disregarded the truth.
- **Intent to Induce Reliance**: Defendant acted to cause Plaintiff to rely on the misrepresentation.
- **Justifiable Reliance**: Plaintiff reasonably relied on Defendant's representations.
- **Resulting Harm**: Plaintiff suffered damages as a direct result of reliance on Defendant's fraudulent conduct.

143.    Defendant, First Merchants Bank (FMB), intentionally misrepresented material facts by:

- Misrepresenting the delinquency status of Plaintiff's account despite Plaintiff's lawful tender of payments.

- Failing to disclose the unauthorized securitization of Plaintiff's account, which shifted financial risks and benefits to Defendant's advantage.
- Providing inaccurate information regarding the applicability of Plaintiff's negotiable instruments under **UCC Articles 3 and 9**.

144.    Defendant's misrepresentations and omissions were made knowingly and with intent to deceive, evidenced by their repeated refusal to address Plaintiff's inquiries and their deliberate use of procedural misconduct to obscure their actions.

## Unauthorized Securitization of Plaintiff's Account

145.    Defendant engaged in unauthorized securitization of Plaintiff's account, converting the promissory note into financial instruments traded for Defendant's benefit without Plaintiff's knowledge or consent.

146.    Unauthorized securitization involves the bundling and sale of financial obligations, such as promissory notes or credit accounts, to third parties. This practice:

- Lacks transparency.
- Deprives account holders of rights and equitable treatment.
- Benefits institutions like FMB at the expense of borrowers.

147.    Defendant's actions violated:

- **TILA (15 U.S.C. § 1639)**: By failing to disclose material terms related to securitization.
- **UCC Article 9 (§ 9-203)**: By failing to comply with requirements for attachment and enforceability of security interests.
- **Equity and Trust Law Principles**: By breaching fiduciary obligations owed to Plaintiff as trustee of the DOMNIQUE A. SMITH Foreign Trust.

148.    **FMB's 2020 Prospectus** omitted critical information about its securitization practices, reflecting systemic breaches of good faith and transparency. The prospectus:

- Misrepresented the relationship between borrowers, investors, and the institution.
- Failed to disclose how securitization practices could impact the rights and financial interests of borrowers like Plaintiff.

149.    Defendant's unauthorized securitization generated substantial financial gain for themselves while depriving Plaintiff of transparency, redress, and fair treatment.

## Material Harm and Plaintiff's Justifiable Reliance

150.    Plaintiff relied on Defendant's representations regarding the status and terms of the financial account, assuming that their fiduciary obligations and industry standards were being upheld.

151.    Defendant's failure to disclose material facts directly harmed Plaintiff by:

- Eroding the financial standing of the trust through improper charges and securitization.
- Generating false credit reports that damaged Plaintiff's financial and professional reputation.
- Creating procedural barriers that delayed Plaintiff's ability to seek remedies.

152.    Plaintiff's reliance was reasonable given Defendant's fiduciary role and statutory obligations. Defendant's fraudulent misrepresentations caused:

- Financial losses due to unauthorized fees and penalties.
- Emotional distress resulting from uncertainty, harassment, and reputational harm.
- A deprivation of statutory and equitable rights stemming from Defendant's omissions and misconduct.

## Defendant's Intent to Benefit at Plaintiff's Expense

153.    Defendant's fraudulent actions demonstrate a clear intent to benefit at Plaintiff's expense, evidenced by:

- Profits derived from the unauthorized securitization of Plaintiff's account.
- Systematic denial of Plaintiff's rights to transparency and equitable treatment.
- Procedural delays and dilatory tactics designed to obscure their misconduct and limit Plaintiff's remedies.

154.    Defendant's conduct reflects a willful disregard for principles of transparency, equity, and accountability in financial dealings.

## Harm Amplified by Defendant's Pattern of Misconduct

155.    Defendant's fraudulent actions are not isolated incidents but part of a broader pattern of systemic misconduct, characterized by:

- Failure to honor fiduciary and statutory obligations to account holders.
- Deliberate efforts to conceal financial activities and gain unjust enrichment.
- Widespread non-compliance with federal statutes protecting consumer rights.

156.    Plaintiff's claims seek to address not only individual harm but also the broader implications of Defendant's systemic misconduct, ensuring accountability and protecting the integrity of financial practices.

## Equitable Estoppel to Counter Defendant's Defenses

157.    The doctrine of **equitable estoppel** prevents Defendant from denying the validity of Plaintiff's claims or asserting defenses inconsistent with their prior representations and actions:

- Defendant accepted payments tendered under **UCC Articles 3 and 9** but failed to apply them appropriately.
- Defendant's own procedural misconduct undermines any claim that they acted in good faith or with reasonable diligence.

---

## Relief Sought for Fraud

158.    Plaintiff seeks the following relief for Defendant's fraudulent actions:

- **Declaratory Judgment**: Affirming that Defendant engaged in fraud by:
  - Misrepresenting the status of Plaintiff's account.
  - Engaging in unauthorized securitization.
- **Compensatory Damages**: For financial losses, reputational harm, and emotional distress caused by Defendant's fraudulent conduct.
- **Punitive Damages**: To deter Defendant and other entities from engaging in fraudulent practices.
- **Injunctive Relief**: Requiring Defendant to:
  - Cease securitization activities related to Plaintiff's account.
  - Provide a comprehensive accounting of all financial activities involving Plaintiff's account.
- **Restitution**: For all fees, charges, and gains unlawfully obtained through fraudulent practices.
- **Attorney's Fees and Costs**: To compensate Plaintiff for expenses incurred in seeking redress for Defendant's fraud.

---

## Public Policy Implications

159.    This case raises critical public policy concerns regarding transparency and accountability in financial institutions. The omissions in FMB's 2020 prospectus reflect a systemic failure to uphold principles of fairness and integrity, undermining public trust in the financial system.

160.    **Judicial intervention** is essential to:

- Address systemic misconduct.
- Restore public confidence in financial institutions.
- Reinforce federal laws designed to protect consumers and maintain transparency in financial practices.

161.    The resolution of this case will set a precedent for holding financial institutions accountable, ensuring that borrowers and investors are treated equitably under the law.

## LEGAL PRECEDENTS SUPPORTING PLAINTIFF'S CLAIMS

162.    Plaintiff incorporates by reference paragraphs 1 through 158 as though fully set forth herein.

---

## COUNT I: VIOLATION OF THE TRUTH IN LENDING ACT (TILA)

### 1. Mourning v. Family Publications Serv., Inc., 411 U.S. 356 (1973)

- The Supreme Court held that TILA is a remedial statute intended to achieve a "meaningful disclosure of credit terms" and prevent predatory lending practices.
- This precedent underscores Defendant's failure to provide the required disclosures about Plaintiff's account, including unauthorized securitization and finance charges.

### 2. Anderson Bros. Ford v. Valencia, 452 U.S. 205 (1981)

- Emphasizes the necessity for creditors to provide clear and conspicuous disclosures in consumer credit transactions.
- Defendant violated this principle by failing to disclose the securitization of Plaintiff's account and the improper handling of the credit balance refund under 15 U.S.C. § 1615.

---

## COUNT II: BREACH OF FIDUCIARY DUTY

### 3. SEC v. Chenery Corp., 318 U.S. 80 (1943)

- Establishes that fiduciary duties require parties in a fiduciary position to act with the highest standard of fairness and good faith.
- Defendant's unauthorized securitization and procedural misconduct violated fiduciary obligations owed to Plaintiff as trustee of the DOMNIQUE A. SMITH Foreign Trust.

### 4. Perry v. Stewart Title Co., 756 F.2d 1197 (5th Cir. 1985)

- Clarifies that fiduciary duties extend to handling financial transactions with care and transparency.
- Defendant's actions, including deliberate mismanagement and non-compliance, breached these fundamental fiduciary principles.

---

## COUNT III: VIOLATION OF UCC ARTICLE 3

### 5. International Harvester Credit Corp. v. Associates Financial Services Co., 522 F. Supp. 514 (N.D. Ill. 1981)

- Reinforces the enforceability of negotiable instruments under UCC Article 3, highlighting the significance of proper tender of payment.
- Defendant violated UCC §§ 3-206 and 3-603 by disregarding Plaintiff's properly tendered negotiable instruments and restricted endorsements.

**6. McAllen State Bank v. Texas Bank & Trust Co., 433 S.W.2d 167 (Tex. 1968)**

- Supports the principle that restricted endorsements must be honored in accordance with UCC provisions.
- Defendant's actions constitute a breach of their statutory obligations under UCC Article 3.

---

## COUNT IV: VIOLATION OF UCC ARTICLE 9

**7. United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979)**

- Emphasizes the applicability of UCC Article 9 in ensuring that secured transactions are conducted with transparency and fairness.
- Defendant failed to comply with UCC §§ 9-203 and 9-210 by not providing the required documentation regarding the securitization of Plaintiff's account.

**8. In re Sunrunner Marine, Inc., 945 F.2d 1089 (9th Cir. 1991)**

- Highlights that secured parties must perfect their interests under UCC Article 9 to enforce their claims.
- Defendant's failure to disclose securitization details represents a fundamental violation of Article 9.

---

## COUNT V: VIOLATION OF FCRA, FDCPA, AND ECOA

**9. Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)**

- Recognizes harm caused by inaccurate credit reporting under FCRA.
- Defendant's false reporting of Plaintiff's account as delinquent and charged off constitutes willful non-compliance with FCRA standards.

**10. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010)**

- Establishes that ignorance of the law is not a defense under FDCPA.
- Defendant's repeated collection attempts, despite Plaintiff's lawful disputes, violated FDCPA standards.

**11. Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc., 576 U.S. 519 (2015)**

- Affirms the prohibition of discriminatory practices under ECOA, including disparate treatment in lending and servicing.
- Defendant's retaliatory actions and procedural delays disproportionately harmed Plaintiff, violating ECOA protections.

---

## COUNT VI: VIOLATION OF THE FEDERAL RESERVE ACT

### 12. Scott v. Lloyd, 34 U.S. 418 (1835)

- Affirms the obligations of financial institutions to comply with federal banking laws.
- Defendant's failure to honor tendered payments and unauthorized securitization violated 12 U.S.C. §§ 411, 412, and 504.

### 13. In re Bonham, 229 F.3d 750 (9th Cir. 2000)

- Supports the principle that financial institutions must ensure the lawful management of assets, including federal reserve obligations.
- Defendant's mismanagement of Plaintiff's account and collateral directly contravenes the Federal Reserve Act.

---

## COUNT VII: FRAUD

### 14. United States v. Gaudin, 515 U.S. 506 (1995)

- Emphasizes that fraudulent misrepresentations are material when they have a natural tendency to influence or are capable of influencing the decisions of others.
- Defendant's misrepresentations regarding Plaintiff's account status and unauthorized securitization constitute actionable fraud.

### 15. SEC v. W.J. Howey Co., 328 U.S. 293 (1946)

- Establishes criteria for identifying fraudulent practices in financial transactions.
- Defendant's securitization practices without disclosure meet the standard for fraudulent activity.

### 16. Promissory Notes: Promises, Problems (SEC Pamphlet)

- States that promissory notes constitute obligations between companies and investors, with specific guarantees regarding repayment.
- Defendant's unauthorized securitization of Plaintiff's account, without notice or consent, breached the contractual relationship between Plaintiff and Defendant.

---

### Conclusion of Legal Precedents

163.    The above legal precedents underscore the systemic and willful violations committed by Defendant, as well as the harm caused to Plaintiff. These cases establish a clear framework of statutory and fiduciary obligations that Defendant failed to uphold.

164.    Plaintiff respectfully submits this comprehensive account of legal precedents to support their claims for relief and to affirm this Court's authority to grant the remedies sought in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

### A. Declaratory Relief

165.    Declare that Defendants' actions, including but not limited to unauthorized securitization, failure to honor lawful tender, false credit reporting, and procedural misconduct, constitute violations of:

- **Truth in Lending Act (TILA)**: For failing to disclose material terms, improperly crediting payments, and engaging in deceptive practices.
- **Fair Credit Reporting Act (FCRA)**: For misrepresentation to credit bureaus.
- **Fair Debt Collection Practices Act (FDCPA)**: For abusive and deceptive collection practices.
- **Equal Credit Opportunity Act (ECOA)**: For discriminatory and retaliatory conduct.
- **Uniform Commercial Code (UCC)**: For breaches in negotiable instruments and secured transactions.
- **Federal Reserve Act**: For mishandling obligations and failing to process lawful tender.

166.    Declare that Defendants breached their fiduciary duty owed to Plaintiff as Trustee of the DOMNIQUE A. SMITH Foreign Trust, causing substantial financial, reputational, and emotional harm.

167.    Declare that Defendants' omissions in their 2020 prospectus, including their failure to disclose securitization practices and associated risks, constitute fraud and a breach of fiduciary duty, violating both federal and state law.

168.    Declare that Defendants' actions and omissions warrant significant judicial remedies to address the harm caused to Plaintiff and uphold the principles of equity, transparency, and accountability.

### B. Compensatory Damages

169.    Award compensatory damages to Plaintiff totaling **$4,000,000,** calculated as follows:

- **Financial Losses**: Direct monetary losses caused by unauthorized securitization, refusal to credit lawful tender, mismanagement, and inflated charges.
- **Restitution**: Return of improperly assessed fees, penalties, and other charges not in compliance with statutory guidelines.
- **Prospectus-Related Harm**: Damages resulting from Defendants' omissions in their prospectus, which deprived Plaintiff of essential information to protect their financial interests.

## C. Emotional Distress Damages

170.    Award **$2,000,000** for severe emotional and reputational harm resulting from:

- **Anxiety and Distress**: Harassment through unlawful collection efforts and procedural delays despite valid disputes.
- **Reputational Damage**: Negative credit reporting that caused embarrassment and hindered financial opportunities.
- **Prolonged Litigation Stress**: Defendants' refusal to resolve disputes in good faith.

---

## D. Statutory and Punitive Damages

171.    Award statutory damages under applicable laws, totaling **$47,000,000,** calculated as:

- **TILA (15 U.S.C. § 1640).**
- **FCRA (15 U.S.C. § 1681n)** for willful non-compliance.
- **FDCPA (15 U.S.C. § 1692k)** for deceptive practices.
- **ECOA (15 U.S.C. § 1691e)** for discriminatory practices.
- **Federal Reserve Act (12 U.S.C. § 504)** penalties totaling **$40,000,000,** calculated at $1,000,000 per day for systemic violations through December 2024.

172.    Award **$9,000,000** in punitive damages to deter Defendants and other entities from engaging in systemic misconduct and fraudulent practices, linking these damages directly to the harm caused by omissions in the 2020 prospectus and related deceptive activities.

---

## E. Injunctive Relief

173.    Enjoin Defendants from:

- Continuing unlawful collection activities related to Plaintiff's account.
- Reporting false credit information to credit bureaus.
- Engaging in unauthorized securitization of consumer accounts.

174.    Mandate that Defendants:

- Provide a comprehensive accounting of all financial transactions related to Plaintiff's account, including securitization activities and the chain of title documentation.
- Refund credit balances owed to Plaintiff under **15 U.S.C. § 1615**.
- Correct all credit reporting inaccuracies and cooperate fully with credit bureaus to restore Plaintiff's financial standing.

- Publicly disclose all material information omitted from their 2020 prospectus, including the risks and financial impacts of securitization practices.

## F. Specific Performance

175.    Compel Defendants to:

- Process Plaintiff's lawful tender of payments as required under **UCC §§ 3-206 and 3-603**.
- Reverse unauthorized charges and adjust Plaintiff's principal balance accordingly.
- Fulfill contractual obligations in compliance with federal statutes and good faith practices.

## G. Equitable Relief

176.    Grant equitable remedies to:

- Impose a constructive trust over funds unlawfully obtained through fraudulent and deceptive practices.
- Appoint a third-party monitor to oversee Defendants' compliance with consumer protection laws, fiduciary duties, and disclosure obligations, ensuring transparency and accountability in future practices.
- Mandate Defendants to undergo regular audits to ensure ongoing compliance with federal and state laws.

## H. Further Relief

177.    Award any additional remedies deemed just and proper, including:

- **Attorney's Fees and Litigation Costs**: Recovery of all legal expenses incurred.
- **Future Oversight**: Require Defendants to implement systemic reforms to prevent recurring violations.

## Monetary Relief Summary

178.    **Total monetary damages sought**:

- **Compensatory Damages**: $4,000,000.
- **Emotional Distress Damages**: $2,000,000.
- **Statutory and Punitive Damages**: $56,000,000.
- **Total Monetary Relief: $62,000,000.**

## Conclusion & Public Policy Impact

179.    Defendants' systemic violations highlight the broader implications of financial misconduct, including the erosion of public trust in financial institutions and the integrity of consumer credit systems. By omitting material information from their 2020 prospectus, Defendants perpetuated a pattern of deception that jeopardizes transparency, equity, and accountability in financial practices.

180.    Judicial intervention is essential to address these violations, uphold federal consumer protection laws, and restore confidence in financial systems. The resolution of this case will not only redress the significant harm suffered by Plaintiff but also set a critical precedent for holding financial institutions accountable to their fiduciary and statutory obligations.

Respectfully submitted.

*Jordan C. Smith, Trustee*

**Jordan C. Smith** Trustee for the
DOMNIQUE A, SMITH Foreign Trust
Ambassador, Nation of the Amnesty Coalition
**(WITHOUT RECOURSE) (WITHOUT PREJUDICE)**
c/o 4436 Torrence Ave.
Hammond, IN. 46327
Phone #: (708) 639-0828
Email: talleysmithj@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on 01 / 08 / 2025 , a copy of this **Verified Complaint for Violations of Federal Consumer Protection Laws and Breach of Fiduciary Duty** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Michele M. Kawiecki,**
**Chief Financial Officer**
First Merchants Bank
200 East Jackson Street
Muncie, IN 47305
Phone #: (855) 745-4338

**Jordan C. Smith** Trustee for the
DOMNIQUE A, SMITH Foreign Trust
Ambassador, Nation of the Amnesty Coalition
**(WITHOUT RECOURSE) (WITHOUT PREJUDICE)**