UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DOMNIQUE A. SMITH,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FIRST MERCHANTS BANK,<br>DOVENUEHLE MORTGAGE INC.,<br>WILMINGTON TRUST, and M&T<br>BANK CORP.,<br>　　　　　　Defendants. | Case No. 2:25-cv-8-GSL-AZ |

### FINDINGS, REPORT, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on three motions: Defendants Wilmington Trust and M&T Bank Corp.'s Motion to Dismiss [DE 23], filed July 11, 2025, First Merchant's Bank Motion to Dismiss [DE 35], filed August 25, 2025, and Defendant Dovenmuehle Mortgage Inc.'s Motion to Dismiss Amended Complaint [DE 37], filed August 25, 2025. Plaintiff Domnique Smith, *pro se*, filed a response on July 22, 2025, which addresses arguments contained in all three motions to dismiss. No other responses were filed. On November 4, 2025, District Court Judge Gretchen S. Lund referred all three motions to dismiss to me for a report and recommendation. DE 39.

This Report constitutes the Court's proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that District Court Judge Gretchen S. Lund grant all three motions and dismiss this case in its entirety.

## Background

Smith has sued four financial services companies and institutions alleging violations of federal and Indiana state law.[1] These claims arise from a mortgage obtained by Smith. *Id.* On October 28, 2022, Smith executed and delivered a promissory note for $150,030.00 to First Merchant's Bank (FMB) as the payee. DE 4-3 at 20. On the same day, Smith secured a mortgage for repayment of the note. *Id.* at 26. By the terms of the note, Smith was required to pay monthly mortgage payments beginning on December 1, 2022 using "cash, check, or money order" in United States currency. *Id.* at 27. Before or around December 6, 2022, FMB informed Smith that the servicing of her loan would be transferred to Dovenmuehle Mortgage Inc (DMI). DE 4-3 at 37-38.

In approximately September of 2024, Jordan Talley-Smith, on Smith's behalf, contacted FMB and DMI requesting information about which entity held the rights to the security agreement, a payoff sheet, and other such information relating to Smith's

---

[1] Plaintiff filed her initial pro se complaint [DE 1] on January 8, 2025, which District Judge Lund dismissed without prejudice for failure to state claim. DE 3. Plaintiff then filed an Amended Complaint attaching over 150 pages of exhibits on March 4, 2025. DE 4. A few days later, Plaintiff filed motions requesting leave to correct errors and omissions in her Amended Complaint, which were granted. DE 5, 6, 7. Plaintiff's "Verified Amended Complaint" [DE 8] was filed on March 14, 2025, and is the operative pleading in this case. The Verified Amended Complaint [DE 8] does not include the more than 150 pages of exhibits attached to the Amended Complaint [DE 4]. The Court views this as an oversight, as do the parties, as reflected in their briefings. Plaintiff also requested the Court to consider as part of the pleadings documents filed on July 22, 2025, which are referenced in her complaint but were left out by "clerical omission" and "technical oversight." DE 24. Considering the circumstances, including the reasonable liberal construction afforded pro se plaintiffs and the parties' reliance on these documents in their briefs, the Court granted this motion. DE 42.

To summarize, in analyzing the pending motions to dismiss, the Court will rely on the claims as articulated in the Verified Amended Complaint [DE 8] and will consider the exhibits attached to the amended complaint [DE 4] and the motion for judicial notice [DE 24].

loan. DE 4-3 at 50. FMB responded by letter on September 26, 2024, confirming it owned the loan, answering numerous of Talley-Smith's questions, and requesting clarification on what errors Talley-Smith believes occurred. *Id.* at 62.

On October 10, 2024, Smith sent a document by U.S. Mail that she calls a "restricted endorsement remittance coupon." DE 24 at 10. The "coupon" appears to be an invoice for payment sent by FMB to Smith indicating the amount due that month and payment due date, along with Smith's handwritten remarks on the document. *Id.* Smith wrote "accept for deposit," "pay to bearer," the amount of money, and her name on the invoice, and sent it back to FMB. *Id.* She did not attach a check or cash or provide any account or routing information or any other information that would enable payment. Smith nevertheless, through Talley-Smith, asserted his "coupon" (which he also refers to as a "bill of exchange") constituted a tendered payment and it along with other such coupons "discharge[d] the debt in full." DE 4-4 at 63-64.

Separate and apart from the coupon, Smith also alleges that Defendant Wilmington Trust, a subsidiary of M&T, was granted a "securitized trust" from FMB which held FMB's mortgage-backed assets. DE 4 at 2. According to her complaint, Smith based this on a document entitled "First Supplemental Indenture" that was executed on March 31, 2022. DE 4-3 at 11. The Indenture, attached as an exhibit to the complaint, identifies a merger between First Merchant's Corporation and Level One Bancorp, Inc., with Wilmington Trust as the trustee of the new entity. *Id.* The First Supplemental Indenture does not reference mortgages but incorporates by reference a different Indenture from December 18, 2019, from which the company "issued U.S. $30,000,000

3

of its Fixed-to-Floating Rate Subordinated Notes due 2029 (the "Notes")." *Id.* at 11. According to these documents, all notes referenced in the supplemental indenture refer to these previously issued notes. The new entity would assume all "outstanding notes and any other amount due" of the $30,000,000 worth of Subordinated Notes. *Id.* When Talley-Smith called M&T, purportedly believing that it owned the loan, M&T confirmed that it did not own the mortgage and Smith has no loan or reference number relating to Smith. DE 4-4 at 56-58.

Smith asserts multiple claims. DE 8. First, she alleges violation of the Truth in Lending Act, 15 U.S.C. § 1641(g), for alleged concealment of the ownership of the loan. DE 8 at 13. The second count is for a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a), for furnishing knowingly false credit information. *Id.* at 16. The third count is for a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d, for abusive or harassing debt collection practices. *Id.* at 19. The fourth count is for a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 for failure to provide accurate loan serving disclosures. *Id.* at 22. The fifth count is for violations of UCC Articles 3 and 9 for failure to honor negotiable instrument and secured transactions. *Id.* at 25. The sixth count is for breach of contract and fiduciary duty. *Id.* at 28. Embedded in her federal claims are assertions that the same conduct also violates parallel provisions of Indiana state law. Smith demands a host of remedies, such as injunctive relief, specific performance, equitable relief, and statutory and compensatory damages totaling millions of dollars. *Id.* at 31-34.

## Analysis

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a cause of action when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). However, when subject matter jurisdiction is not apparent on the face of the complaint and is contested, the district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008). "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 289 U.S. 178, 198 (1936)).

A court may lack subject matter jurisdiction if a party lacks Article III standing to be in federal court in the first place. For Article III standing to be present, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). "An injury is not fairly traceable to a defendant's conduct if the causal chain is 'attenuated' [citation omitted]." *Pit Row, Inc. v. Costco Wholesale Corporation*, 101 F.4th 493, 502 (7th Cir. 2024).

Meanwhile, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the

complaint rather than the merits of the suit. That is, a "complaint must contain allegations that collectively state a claim to relief that is plausible on its face." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court will "accept all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor." *Alarm Detection Sys.*, 930 F.3d at 821. But "[l]egal conclusions," such as boilerplate assertions that Defendants committed a tort, "do not get the same benefit," and the Court will disregard those. *Id.* (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiffs are entitled to relief, the case enters discovery," otherwise "dismissal is appropriate." *Id.* (citations omitted).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citation omitted). Nevertheless, "pro se plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible." *Cagle v. Weill Cornell Med.*, 680 F.Supp.3d 428, 434 (S.D.N.Y. 2023). A plaintiff must allege "only enough facts" to "nudge[ ] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Seventh Circuit has commented that "the plausibility standard does not allow a court to question or otherwise disregard nonconclusory factual allegations simply because they seem unlikely." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015); *see also Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (noting that a complaint should survive a motion to

dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citation omitted).

Perhaps most importantly in this case, since Smith has attached a large number of exhibits to her complaint, a court may consider exhibits attached to pleadings in deciding a motion to dismiss. *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002). In fact, it is a "well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998) (emphasis removed). It is entirely possible, then, for a plaintiff to "plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *In the Matter of Wade,* 969 F.2d 241, 249 (7th Cir. 1992).

Defendants all move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, with FMB also bringing its motion under 12(b)(1) for a lack of Article III standing. DE 23, 35, and 37. I will address each claim in turn as they relate to each defendant.[2] But I first will analyze the issue at the core of all three motions: Smith's purported payment of her loan by way of the payment coupon.

### A.   The "Payment Coupon"

Before moving to the specifics of each claim, the Court will address the validity

---

[2] Defendants have asserted some bases for dismissal as to some claims, such as statute of limitations, which are more appropriate for summary judgment based on the allegations in this case. For the sake of clarity and efficiency, the Court will only focus on the dispositive grounds for dismissal in this Report & Recommendation.

7

of Smith's payment coupon sent to FMB on October 10, 2024. Looking purely at the face of the coupon, it is entirely implausible, both factually and legally, that such a document could qualify as legal tender. It is nothing more than FMB's invoice with Smith's handwritten notes of "accept for deposit," "pay to bearer," the amount of money, and her name on it. It does not contain any bank or account information, credit card number, information tying it to an institution that holds currency, or any other indicia that any reasonable person would consider it to constitute a valid means of payment. DMI states the coupon is "the equivalent of Monopoly money," but that is too generous. Monopoly money, for what it is worth, actually looks like *money*. DE 37 at 3. This payment coupon does not even pretend do that. And the fact that Smith and Talley-Smith were informed multiple times that the coupon is not considered a payment by FMB discredits any assertion that they believed otherwise.

Unsurprisingly, caselaw bears out this conclusion as well. See *Hennis v. Trustmark Bank*, Civil Action No. 2:10CV20–KS–MTP, 2010 WL 1904860, at *5–6 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 758-60 (W.D. Va. 2007) (finding plaintiff's "claim that tendering the Bill of Exchange amounted to legitimate performance of the contract is highly implausible" when "the legal authorities Plaintiff cites and the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper"), *aff'd*, 282 F. App'x 260 (4th Cir. 2008) (per curiam). Because this coupon cannot plausibly be considered legal tender in any sense, any

claims relying on this document as a payment necessarily fail on their face.[3]

## B.   Truth in Lending Act (TILA)

The Truth in Lending Act requires certain disclosures be made to a borrower when a mortgage loan is transferred from one lender to another. *See* 15 U.S.C. § 1641(g). Smith's TILA claim centers around what she believes was the transfer of ownership of her loan from FMB to DMI via the servicing agreement and from FMB and DMI to Wilmington via the Indenture. She claims that Wilmington (and its parent M&T) failed to confirm ownership of her loan and actively concealed their ownership by way of the

---

[3] The idea that payments can be made as such are often referred to in other courts as "vapor money theory" or "redemption theory." *See Adams v. Partners*, No. 24-CV-943-PP, 2025 WL 101615, at *5–6 (E.D. Wis. Jan. 15, 2025) ("Across the country, federal courts at the appellate and district court levels have rejected the "vapor money" debt theory. *See*, *e.g.*, *Allah-Bey v. Roberts*, 668 F. App'x 419, 420 (3d Cir. 2016) (affirming the district court's dismissal of the plaintiff's complaint where his theory was "identical to the 'vapor money' legal theory that numerous federal courts have rejected as frivolous"); *Price v. Lakeview Loan Servicing, LLC*, Case No. 21-11806, 2022 WL 896816, at *3 (11th Cir. 2022) (affirming district court's dismissal of plaintiff's complaint based on the "vapor money" theory and stating "[t]his theory is nonsensical and fundamentally misunderstands how negotiable instruments work"); *Knapp v. Compass Minn.*, No. 24-CV-00100, 2024 WL 2832502, at *7 n.4 (D. Minn. June 4, 2024) ("courts across the country have consistently rejected the 'redemption' and 'vapor money' theories as frivolous and nonsensical").

Federal courts have held "[t]he 'vapor money' theory of recovery is patently frivolous no matter how disguised under a legitimate cause of action." *Wilson v. GMFS Mortg.*, Civil Action 22-478, 2023 WL 1542431, at *7 (M.D. La. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1802406 (M.D. La. Feb. 7, 2023); *see*, *e.g.*, *Torne v. Republic Mortgage LLC*, Case No. 09-2445, 2010 WL 1904507 (D. Nev. May 10, 2010) (dismissing, in some instances *sua sponte*, claims alleging fraud, conversion, conspiracy, extortion, securities fraud, and violations of the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and GAAP, based on "vapor money" theories of recovery where the plaintiff claimed his loan was invalid because it was made with credit rather than cash); *Barber v. Countrywide Home Loans, Inc.*, Case No. 09-40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009) (dismissing as "utterly frivolous" and "patently ludicrous" claims of fraud, racketeering and conspiracy based on vapor and unlawful money claims, and advising the plaintiffs that their "tactics are a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars").

First Supplemental Indenture. DE 8 at 3. Her claim is doomed from the outset because it derives from purported injuries caused by mistaken beliefs about loan transfers that were never made. FMB's retention of DMI to service the loan is not a transfer or assignment of the loan that implicates TILA or imposes any liability under the statute. *See* 15 U.S.C. § 1641(f). So that theory fails as a matter of law.

Meanwhile, Plaintiff's belief that Wilmington took ownership of the loan via the First Supplemental Indenture is based on her misinterpretation of that document, which does not indicate any transfer of the loan to Wilmington. Wilmington correctly points out that the Indenture was executed six months before Smith received the loan and she has pled no facts to show they ever had ownership. She assumes "the loan was deposited into the [Wilmington or M&T] trust post-origination." DE 8 at 3. But this is pure speculation. Without any factual allegations to plausibly support her beliefs or to contradict the records she herself supplied, her TILA claims should be dismissed.

Smith has also failed to allege any injury from the alleged violation, which implicates dismissal under Rule 12(b)(1). An informational injury with no adverse effects does not satisfy the case or controversy requirement of standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021); *see also Diaz v. Caliber Home Loans, Inc.*, 2025 WL 1503846, at 5 (D. R.I. 2025) ("Mr. Diaz's claim that he did not receive notice of the assignment, without anything more, amounts to purely an informational injury, which does not satisfy the case or controversy requirement"). Even if there was an assignment or transfer, she would have no standing to challenge that transaction. *In re Jespon*, 816 F.3d 942, 946 (7th Cir. 2016) ("New York courts have held uniformly that

'a mortgagor whose loan is owned by a trust' is not an intended beneficiary of a trust, and 'does not have standing to challenge the [trustee]'s . . . status as assignee . . . based on purported noncompliance with certain provisions of [a] PSA.' [citation omitted]."); *Jayden v. HSBC Bank, USA, N.A.*, 956 F.3d 69, 70 (1st Cir. 2020) ("[B]orrowers do not have standing to challenge a mortgage assignment based on an alleged violation of a trust's pooling and servicing agreement."). Smith's TILA claim must therefore be dismissed for failing to state claim and lack of subject matter jurisdiction.

### C. Fair Credit Reporting Act (FCRA)

Defendants argue that Smith's FCRA claims should be dismissed because they fail to cite a provision of the statute that provides a private right of action under that statute. Smith's pro se status requires the Court to look beyond pleading technicalities to the substance of the allegations themselves. But even if the Court were to excuse Smith for citing the wrong provision of the FCRA, her claim substantively fails because it relies on the use of the payment coupon. In essence, Smith claims that "[d]espite Plaintiff having tendered lawful payments" (i.e., the payment coupon) the defendants violated the FCRA by knowingly submitting false information. DE 8 at 12. Smith contends that FMB's rejection of the payment coupon rendered any credit reporting action by Defendants as a violation of the FCRA's prohibition on reporting false information. *Id.* This claim is frivolous because the payment coupon is frivolous on its face. Moreover, as explained above, Smith has not plausibly alleged Wilmington or M&T were involved in any way in her failure to pay the loan. The FCRA claims should thus be dismissed for failure to state claim pursuant to Rule 12(b)(6).

11

**D.   Fair Debt Collection Practices Act (FDCPA)**

The Fair Debt Collection Practices Act provides remedies for debtors against debt collectors for engaging in certain abusive or deceptive practices to collect debts. 15 U.S.C. § 1692, et seq. Smith's FDCPA claim is doomed for the same reasons as the FCRA claim because it is factually premised on "wrongful foreclosure threats despite Plaintiff's documented compliance with mortgage obligations." DE 8 at 19. For example, one of her allegations under the FDCPA count concerns wrongful foreclosure actions by FMB "despite receiving valid payments." *Id*. As explained, any claims that rely on the validity of Plaintiff's payment coupons to challenge responsive actions by Defendants as wrongful are implausible on their face.

In addition, Smith does not plausibly allege that FMB, Wilmington, or M&T are debt collectors that would be subject to the FDCPA. As explained above, Smith's claims against Wilmington and M&T are non-starters because Smith fails to plausibly allege that they were involved in any actions complained of in this case, and her exhibits contradict any such involvement. FMB is a creditor, and the FDCPA does not provide Smith a valid cause of action against creditors. *Schlaf v. Safeguard Property, LLC*, 899 F.3d 459, 466 (7th Cir. 2018). ("Creditors are…not subject to the FDCPA as long as they are collecting their own debt in their own name and their principal purpose as an entity is not debt collection."). *See also Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363, at 1 (7th Cir. 2007) ("[A] creditor who collects its own debt using its own name is not a 'debt collector'."); *Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005) ("[A] distinction between creditors and debt collectors is fundamental to the FDCPA, which

does not regulate creditors' activities at all."); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he FDCPA distinguishes between 'debt collectors' and 'creditors'. Creditors . . . are not covered by the Act."). It is unclear from DMI's brief whether it contends that it is an improper entity to be sued under the FDCPA as a servicer of the mortgage. But in any event, the claim cannot survive because the only wrongful conduct alleged by Smith is based on her frivolous assertion that her debts were paid through her payment coupons.

In her response, Smith contends the defendants' case management communications with her pursuant to Rule 26(f) constitute admissions which contradict their motions to dismiss. DE 25 at 6. Such communications are not admissions, nor are they valid exhibits for consideration in a motion to dismiss. For example, Smith believes a generic disclaimer in one of Wilmington's emails about scheduling their Rule 26(f) planning conference constitutes an admission that they were seeking debt collection action against her. Beyond the obvious frivolity of such a claim, the only exhibits the Court may rely on are the exhibits attached to her pleadings.

This count should be dismissed under Rule 12(b)(6) for failure to state a claim.

**E.   Real Estate Settlement Procedures Act (RESPA)**

Section 6 of the Real Estate Settlement Procedures Act provides causes of action for consumers against mortgage lenders and servicers for certain conduct relating to the servicing of mortgage loans. 12 U.S.C. § 2605. Smith alleges that Defendants failed to adequately respond to a qualified written request as required under RESPA. DE 8 at 25. The legal basis for this claim, as FMB aptly puts it, is "mostly incoherent." DE 35 at

13

19. While the count is ostensibly brought under RESPA, she cites to 12 C.F.R. § 1026.36(c) numerous times, which is an implementing regulation of TILA. Regardless, Smith appears to argue (somewhat conflictingly) that: (a) she did not receive requested payoff statements, and (b) the payoff statements she received were inaccurate. Any assertion that Smith did not receive payoff sheets is flatly contradicted by her own exhibits. *See, e.g.,* DE 4-4 at 61 (purported transcript of a call where Talley-Smith, on Smith's behalf, stated to an FMB representative: "I requested a payoff sheet, and while they sent it, they didn't address all my concerns."); *Id*. at 63 (purported communications challenging the accuracy of payoff sheets based on bills of exchange submitted). Instead, her real concern appears to be the accuracy of the payoff statements she received. DE 8 at 22. ("Plaintiff made multiple requests for an *accurate* payoff statement, but Defendants refused to provide one.") (emphasis added). Once again, Smith's claim of wrongful conduct is tethered to her frivolous assertion that Defendant did not credit her payment coupons against her mortgage debt. This cannot be a valid basis to plead her RESPA claim.

Further, a plaintiff seeking relief under RESPA must allege damages caused by a defendant's noncompliance with statute. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016). Smith's pleadings do not contain any explanation of how she suffered damages other than her subjective belief that the payoff sheet should have deducted amounts from the payment coupon. This is not enough to state a valid claim for relief. Smith's RESPA count should be dismissed pursuant to Rule 12(b)(6).

F.  **UCC Claims**

Keeping with the theme, Smith's alleged violations of the Uniform Commercial Code also rely entirely on her frivolous claim that her payment coupons were valid negotiable instruments that Defendants were legally required to under as lawful tender. Smith states as her factual basis for the claim that she "lawfully tendered payment using a restricted indorsement remittance coupon, which Defendants unlawfully refused to process." DE 8 at 26. She further alleges Defendants' failure to accept her coupons as payment was part of a broader securitization fraud scheme which led to fraudulent default and foreclosure threats against Smith. *Id.* at 26-27. For reasons repeatedly explained above, this claim is a non-starter and should be dismissed for failure to state a claim under Rule 12(b)(6).[4]

G.  **Breach of Contract and Breach of Fiduciary Duty**

Smith fails to allege facts supporting the elements of either breach of contract or breach of fiduciary duty. And even if she had, she once again premises these claims on the use of the payment coupon.

First, as to FMB, "[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986). FMB's refusal to accept the

---

[4] FMB believes Smith is alleging, somewhat vaguely, a form of breach of contract under the UCC, which would also fail as a matter of law because Smith admits she did not tender payment in the form specified in the contract for the promissory note. DE 35 at 24.

payment coupon was not the breach, Smith's use of the coupon was the breach. In any event, Smith does not state a factual basis for breach of contract. She merely makes conclusory statements such as "Defendants First Merchants Bank…violated their contractual obligations and fiduciary duties to Plaintiff by failing to properly service the mortgage, concealing securitization details, and engaging in deceptive practices to increase financial liability on Plaintiff." DE 8 at 28. She offers no facts to support her claims and her exhibits contradict them. As to a fiduciary duty, Smith does not attempt to allege such that a fiduciary relationship existed. "Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship…. A lender does not owe a fiduciary duty to a borrower absent some special circumstances." *Huntington Mortg. Co. v. Debrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998). This principal of law is "well-settled in Indiana." *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002).

      Smith's claims of breach of contract and fiduciary duty against DMI fail for the same reason. DMI's refusal to accept the payment coupon cannot constitute the breach, and no facts supporting the existence of a fiduciary duty were included in the pleadings. Rather, the pleadings and exhibits show only that Smith breached the contract first. Lastly, as to Wilmington and M&T, Plaintiff has not alleged a plausible relationship with them and her attached documents belie any such relationship. Plaintiff's contention that Wilmington's position as the trustee in the First Supplemental Indenture is proof a fiduciary relationship is misplaced. She is correct that "[a] trust is a fiduciary relationship between a person who, as trustee, holds title to property and

another person for whom, as beneficiary, the title is held." Ind. Code § 30-4-1-1(a). But Smith was not party to the trust created by the Indenture or a beneficiary. And neither Wilmington nor M&T own the rights to her loan, so they cannot hold title to any of her property. These claims should be dismissed for failure to state a claim under Rule 12(b)(6).

### H.  Supplemental State Law Claims

Smith's Verified Amended Complaint asserts jurisdiction in this Court based on the federal claims asserted and supplemental jurisdiction of the state law claims. She asserts no other basis for federal jurisdiction. Having found that Smith's federal claims fail to state a claim for relief, I also recommend that the District Court decline to exercise supplemental jurisdiction over any remaining parallel state law claims that are referenced in the complaint in the same counts as her federal claims. The viability of those claims is remote, but undeveloped in the briefs submitted by the parties, which leaves the issue to the Court's discretion. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); 28 U.S.C. § 1367(c). The Seventh Circuit counsels "that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

As with every rule, there are exceptions. These include when:

(1) "the statute of limitations has run on the pendent claim, precluding the

> filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided."

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal citation and quotation marks omitted). None of these exceptions clearly apply here.

## Conclusion

Smith has pled herself out of court because either she did not adequately plead the claims she brings, or her exhibits contradict her claims. At their core, her claims rely on the use of the payment coupon, a theory of tendering money so frivolous and lacking in a legal basis that any claim using it could be dismissed summarily. Despite the charge from other courts to deny such claims on their face, I have analyzed each of Smith's claims and explained why none of them plausibly state a claim upon which relief can be granted or even allege an injury which can be traced to the defendants.

Accordingly, for the reasons discussed, the Court **RECOMMENDS** that District Court Judge Gretchen S. Lund **GRANT** Defendants Wilmington Trust and M&T Bank Corp.'s Motion to Dismiss [DE 23], First Merchant's Bank Motion to Dismiss [DE 35], and Defendant Dovenmuehle Mortgage Inc.'s Motion to Dismiss Amended Complaint [DE 37] and **DISMISS WITH PREJUDICE** the case in its entirety.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the

right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

**SO ORDERED** this 4th day of March 2026.

> s/ *Abizer Zanzi*
> MAGISTRATE JUDGE ABIZER ZANZI
> UNITED STATES DISTRICT COURT